## JOB TALBOT *against* JOEL WHEELER.

Where the declaration in an action of ejectment described the

**WRIT** of error.

This was an action of ejectment brought by *Wheeler* against *Talbot*, for " a certain tract of land lying in

land demanded thus: " A certain tract of land lying in *Farmington*, on the west side of the river, bounded north on the plaintiff's own land, easterly on the *Talcott Mountain* turnpike road, south on the defendant's own land, and running westerly about 200 rods, containing about three acres;" it was held to be sufficient.

An issue of fact having been closed *to the court* in the county court, and found for the plaintiff, the defendant appealed to the superior court, where the same issue, without any new pleading, was tried by *the jury*, and a verdict found for the plaintiff, on which judgment was rendered: Held that this judgment was not erroneous.

*Farmington* in *Nod Division* on the west side of the river, bounded north on the plaintiff's own land, easterly on the *Talcott Mountain* turnpike road, south on the defendant's own land, and running westerly about 200 rods, containing about three acres."

In the county court the general issue was pleaded, and the parties put themselves *on the court* for trial.(a)

In the superior court there was no new plea, nor any alteration of the former plea. But by the record of that court it appeared, that a jury was empannelled; that the parties *joined issue as on file;* and that the testimony was heard, and the cause committed to the jury, who found a verdict for the plaintiff, which was accepted by the court, and judgment rendered thereon.

*Edwards* and *T. S. Williams* relied upon two grounds of error; 1. That the declaration was insufficient; and, 2. That the issue should not have been tried by the jury.

1. There was no certainty in the description of the estate demanded; no dimensions of the land are given; but it is bounded north on the plaintiff's land, south on the defendant's; *is about* 200 *rods* in length, and contains *about three* acres. A verdict upon such a declaration can establish nothing. The question between the parties may have been as to the north and south lines; and that point is left as uncertain as before the trial. Neither known bounds, nor length of line, nor quantity of land, are given. All, therefore, is uncertain. As well might a court give judgment for *about* 100 *dollars* damages, and *about* 20 *dollars* costs.

In *England* the rule has been, that in ejectment the land must be described with such certainty that the sheriff may know of what he is to give possession. *Bindover* v. *Sindercombe,* 2 Ld. Raym. 1470. *Runn. Eject.* 27. Ejectment will not lie for one fourth of a meadow,

(a) Vide *Stat. Conn.* tit. 6. c. 1. s. 8.

June, 1810.

TALBOT
v.
WHEELER.

without showing how many acres. *Pemble* v. *Sterne*, 1 *Lev.* 213. Nor for forty acres of meadow and pasture, without saying how much of each. *Martyn* v. *Nichols*, *Cro. Car.* 573. *Knight* v. *Symmes*, 1 *Show.* 338. Nor for a close of three acres, without saying how much wood and how much arable. *Savell's Case*, 11 *Co.* 55. recognised and confirmed in *Knight* v. *Symmes*, 1 *Salk.* 254.

It is admitted that the *English* rule, as to certainty of description in actions of ejectment, is now much relaxed; but this is because it is a mere action of trespass. *Royston* v. *Eccleston, Cro. Jac.* 654. *Owen*, 18. And because it is a fictitious action entirely under the control of the court, who rectify any mistake in a summary way. *Collingham* v. *King*, 1 *Burr.* 629. *Connor* v. *West*, 5 *Burr.* 2673.

There is a great difference as to the description necessary when an action is brought for a specific thing, (as in detinue, &c.) and when for damages done to that thing. 4 *Burr.* 2454. And when a real action (as a *præcipe*, &c.) is brought, great strictness is required. 1 *Burr.* 629.

This action is of as high a nature as a writ of right. 2 *Swift's Syst.* 69. It is not founded upon any fictitious proceedings. And our courts never have exercised, and from the nature of the process never can exercise, that summary authority over it, which the *English* courts exercise over their action of ejectment.

2. The issue is closed to the court, and tried by the jury. Our statute gives the parties a right of election as to the forum; and when this is made, the court cannot change it. It is like a trial by the jury, when it should be by the record; which is bad. *Bret and Sheppard's Case*, 1 *Leon.* 90.

The pleadings in the county court remain pleadings in the superior court. The plea was a plea to the action. No other plea has been given; it therefore remained unchanged; and judgment could not be rendered

as upon a *nihil dicit*. Besides, it is expressly said in the record, that *the parties joined issue as on file.*

In *England*, when even the *similiter* is omitted, it is bad, unless amended, although it has been held good after verdict, because the fact of joining issue appeared upon the *postea*. But in this case, the contrary appears; for the issue joined on file concludes to *the court*. Neither is this a mere defect in form; for the pleadings are regular.

*Daggett*, for the defendant in error. Every presumption is to be made in favour of a verdict that can be made. The court will intend that a certain piece of land was pointed out to the jury upon which they passed; and what that was may be ascertained from the minutes of the judges, and the oaths of the jury.

The precision required in the ancient *English præcipe quod reddat*, which Lord *Mansfield* says was too nice for practical purposes, has never been adopted here. And it was there required, because such was the old form in the *Register*. 1 *Burr.* 629. That the land must be so described that the sheriff may find it, was once held; but this has not been the rule in *England*, in actions of ejectment, for more than a century. And the description in ejectment is now very general; as for "a messuage and tenement;" *Doe*, d. *Stewart*, v. *Denton*, 1 *Term Rep.* 11. for "an acre of land;" *Goodtitle*, d. *Chester*, v. *Alker et al.*, 1 *Burr.* 133. *Cromp.* 121. for "50 acres of furze and heath, and 50 acres of moor and marsh;" *Connor* v. *West*, 5 *Burr.* 2672. for "5,000 messuages, 5,000 cottages, 10,000 acres of land," &c. *Cotlingham* v. *King*, 1 *Burr.* 623. The plaintiff must take possession at his peril; and if he takes more than he ought, the court will set it right in a summary way.

As to the difference in the actions in *England* and in this state, it is to be remarked, that ejectment is there conclusive between the parties as to possession; here as

June, 1810.

TALBOT
v.
WHEELER.

to title : and the same reason exists for permitting a general description here as there.

2. The only case relied upon, on the second point, is *Bret and Sheppard's. Case ;* and that does not compare with this. By our law, there is no mode of trial but by jury, except where there is an agreement of the parties to put the issue to the court. In this case, there was no agreement of parties to try the issue by the court, except at the county court. When the cause came to the superior court, the presumption is, as there was no agreement there to the contrary, that it was to be tried by the jury. Were it otherwise, can the party now say he has not had a trial by the court ? The court have surely acted and judged upon the issue ; and had it been put to them to try, it would not have vitiated their judgment that they called a jury to their aid. If this court can see that the cause has been tried according to law, they will not reverse the judgment for an informality.(a)

The record states that the parties appeared, were heard, &c. It must, therefore, be taken for granted, that they agreed the cause should be tried by the jury. In *Sayer* v. *Pocock, Cowp.* 407. and *Babcock* v. *Huntington,* 2 *Day,* 392. where the *similiter* was omitted, no advantage was allowed to be taken of it after verdict.

MITCHELL, Ch. J. This was an action of ejectment, brought for the recovery of the possession of a lot of land lying in *Farmington,* described in the declaration as follows : " Lying west of *Farmington* river, bounded north on the plaintiff's land, south on the defendant's land, easterly on the *Talcott Mountain* turnpike road, running westerly about 200 rods, containing about three acres."

In the county court, the defendant pleaded " no wrong nor disseisin," and put himself *on the court* for trial ; and

(a) *Stat. Conn.* tit. 2. c. 1. s. 2.

the plaintiff also referred the question to the court by
adding the *similiter*. At the *December* term, 1808, the
county court tried the cause without the aid of a jury,
and rendered judgment for the defendant in error. An
appeal was duly entered by the original defendant in the
action to the superior court holden at *Hartford*, in *Fe-
bruary* term, 1809 ; and the cause, by regular continuances,
came to the *February* term, 1810; and no alteration was
made in the defendant's answer, and no agreement was
made to refer the issue to the judges of the superior
court for trial. Accordingly, at the *February* term, 1810,
the cause was, without any objection of either party,
tried by a jury, and judgment rendered for the defendant
in error.

One of the errors complained of is, that the superior
court suffered the cause to be tried by a jury, after the
parties had referred it to the court for trial, without the
aid of a jury. But the record does not show that any
agreement was made in the superior court to refer the
cause to the judges only for trial ; and the statute di-
rects that matters of fact shall be tried by a jury, un-
less referred to the court by the agreement of the par-
ties. The words of the statute are, " that all actions
which shall be tried before the superior or county courts,
when issue is joined on any matter of fact, shall be
tried by a jury of twelve men of the neighbourhood,
qualified, empannelled, and sworn ;" (tit. 6. c. 1. s. 8.)
to which is annexed a proviso, which allows the parties
to agree to put themselves on the court for trial, and
authorizes the judges of the respective courts, having ju-
risdiction of such actions, to proceed to hear and try the
same without a jury, and award damages and costs, and
grant execution.

By long usage in our courts in civil actions, where
the defendant pleads the general issue before the county
court, and the action is appealed to the superior court,
and the defendant in that court makes no alteration in his

June, 1810.

TALBOT
v.
WHEELER.

plea, the cause proceeds to trial, on the presumption that he relies upon the plea tendered in the court below. If no agreement of the parties is made for referring the cause to the court for trial, agreeably to the proviso, then, by the section of the statute above recited, the issue must be tried by the jury. In this case, the parties merely agreed to put themselves on the *county court*. It is very questionable whether an agreement entered on the record, referring the issue to the county court only for trial, can, with any propriety, be extended to a trial before the superior court, which was not the subject of the agreement, nor contemplated by the parties. But if it should be admitted, that, by making no alteration in the record, the parties, impliedly, gave this construction to their agreement before the county court; yet it must be considered as abandoned by the parties in voluntarily proceeding to try the issue by a jury in the face of the court; and of course, the cause was regularly tried agreeably to the 8th section of the statute above mentioned.

2. Another error relied upon, is, that the declaration is ill for want of a proper description of the land demanded, which, it is urged, is so uncertain and vague that the officer would not know what land to put the plaintiff in possession of. Formerly, great precision was thought necessary in describing the land demanded in ejectment; but of late the rule is much relaxed. 1 *Burr.* 629. *Runn. Eject.* 125. Indeed, it would be almost impossible, in many cases, so to describe, in a declaration or execution, a small piece of land, that a stranger could ascertain with precision on what part of the surface of the earth the land is situated. This, therefore, is not at present required. Nor is it usual in *England* to mention, in declaring in ejectment, the boundaries of the land demanded, or in specifying the quantity, to have any regard to the true one.

In this state, it has been usual to mention the town and

June, 1810.

TALBOT
v.
WHEELER.

the parish where the land lies, with the boundaries, and the estimated quantity. In the present case, the north, south and east boundaries are given, and *data* furnished by which the remaining one may be ascertained; for it is stated that the lot runs westerly about 200 rods, thus giving the distance from the eastern to the western extremity. The quantity is also stated to be about three acres. Here is much greater precision and certainty in the description than is requisite by the rules given us in the books; nor is there any greater degree of uncertainty in this description than is unavoidable in describing any piece of land not set out by known monuments, and visible landmarks. And the sheriff or officer would have no difficulty in understanding this description, and applying it, when the land should be pointed out. Possession by the officer is to be delivered under the direction of the plaintiff, who, at his peril, is to take possession of that only to which he has proved title. If he take more or other land than he is entitled to, he would be a trespasser, and liable to an action; or the court which tried the cause may give redress in a summary manner. In *New-York*, the supreme court, where the plaintiff had taken possession of more land than was by the verdict recovered, upon motion granted a writ of restitution, provided the plaintiff would not consent to a feigned issue to try the fact in controversy. *Jackson, d. Ostrander,* v. *Hasbrouck*, 5 *Johns. Rep.* 366.

So in *Jackson, d. Moore*, v. *Van Bergen*, 1 *Johns. Cas.* 101. the jury gave a general verdict for the plaintiff; whereas he had proved title only to a moiety of the demanded premises. A motion for a new trial was refused, and the plaintiff ordered to take possession of a moiety of the premises only. In the case of *Goodtitle, d. Wright,* v. *Otway*, 8 *East*, 357. on motion to arrest the judgment rendered in ejectment brought for a messuage and tenement, for the uncertainty in the description, the plaintiff moved to enter the verdict according to the notes of

June, 1810. the judges for the messuage only, and the motion was
granted.

TALBOT
v.
WHEELER.      It is apparent that if any injustice has arisen from
inaccuracy in the description in this case, redress may
be had without reversing the judgment. The judgment,
therefore, ought to be affirmed.

BALDWIN, J. It appears to me that the description of
the land claimed is too uncertain.

I am aware that the action of ejectment in *England*
admits of a very general description; and that of late
years it has even been extended; yet even there, it is
restrained within certain limits. Although the same
exact and precise certainty is not there requisite in
ejectment as in *præcipes*, because the former is there a
fictitious action, contrived for ease and despatch; yet it
will not there lie for an uncertain quantity of land, though
less than the demand may be recovered. The rule is,
that ejectment will not lie where no certainty appears,
whereof the sheriff can deliver possession. *Bindover* v.
*Sindercombe*, 2 *Ld. Raym.* 1470. Suppose in this case,
that the judgment follows the demand, and the execution
the judgment. The demand is for a tract of land bounded
north on plaintiff, east on turnpike, south on defendant,
and running westerly *about* 200 rods, containing *about*
three acres. The plaintiff obtains judgment and execu-
tion by the same description. I inquire how is the she-
riff to find the thing demanded? It has no known appro-
priate appellation, no monuments, no length of lines, or
certain quantity.

It is apparent that the dispute between the parties is
the true place of their divisional line. Their lands unques-
tionably join; that is claimed and is found; but whether
the line of junction is the width of this strip, north or
south of the disputed ground, can never appear by this
record, and the proceedings upon it; for example, if the
sheriff, by virtue of his execution, should give to the
plaintiff possession of a strip of the defendant's land

next south of the land really in dispute, it would still be bounded north on plaintiff, for by this judgment it appears that the land in controversy is his; it might also still be bounded south by the defendant, and east by the turnpike road, and would in every respect conform to the description in the declaration. If he enlarges the width and shortens the length as much as the expression *about* will admit, it still conforms to the description given. I may add, that not only the place, but the quantity, is uncertain. If length of lines, or monuments, or certain boundaries, were given, the quantity, though expressed by the word *about*, might be controlled or made certain; or if the quantity were expressly given, it would control an uncertain line. Here no *datum* is given to ascertain, either the length of lines, or the quantity.

I am aware it will be said, the sheriff is to give possession according to the plaintiff's showing, and at his peril; and that the court will give redress. *Burr.* 2673. 2 *Cromp.* 216. But I ask why shall we thus leave the defendant at the mercy of the plaintiff? We have no summary way to set it right; and this is the only action we admit to try and determine the titles to real estate. I see no reason or necessity for so loose a practice. The subject is capable of more precise description; and until the plaintiff will so shape his demand, that a judgment upon it will probably end the controversy, he is not entitled to judgment.

I doubt whether this description would support ejectment even in *England*, much less would it support their real actions of a higher grade, which conclude the title, and for which we have substituted the action of ejectment without its fictions.

I am of opinion the declaration is insufficient, and that the judgment ought to be reversed.

The other judges concurred in opinion with his honour the chief justice.

Judgment affirmed.